## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                          Case No. 15-cr-198(1) (JRT/TNL)

                    Plaintiff,

v.                                                 **REPORT & RECOMMENDATION**

Eddy Antonio Cardenas,

                    Defendant.

David P. Steinkamp, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for the Government); and

John C. Lillie, III, Dudley & Smith PA, 101 East Fifth Street, Suite 2602, St. Paul, MN 55101 (for Defendant).

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant's Pretrial Motion for Suppression of Evidence (ECF No. 11). This motion has been referred to the undersigned for a report and recommendation to the district court, the Honorable John R. Tunheim, Chief District Judge of the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

A hearing was held on September 23, 2015. Assistant United States Attorney David P. Steinkamp appeared on behalf of the United States of America (the "Government"). John C. Lillie, III, appeared on behalf of Defendant Eddy Antonio Cardenas.

The Court heard testimony from Officer Jeffrey Werner of the Minneapolis Police Department. The Government offered and the Court received: Exhibit 1, an application

for search warrant and supporting affidavit; search warrant; and receipt, inventory, and return for an Audi vehicle.  Post-hearing briefing is now complete and this motion is ripe for a determination by the Court.

## I. FINDINGS

Based upon the file and documents contained therein, along with the testimony and exhibit presented, the undersigned Magistrate Judge makes the following findings.

Officer Werner has been a licensed peace officer for over 20 years.  Officer Werner has been doing narcotics investigations for three years and is currently assigned to the weapons unit, where he conducts gun, narcotics, and gang investigations.  On or about January 26, 2015, Officer Werner received information from a confidential informant ("CI") regarding the transportation of methamphetamine from California to Minneapolis, Minnesota.  (*See* Ex. 1 at 1-2.)  The CI informed Officer Werner that the methamphetamine would be in a silver Audi with California license plates and very dark tinted windows.  The silver Audi would be driven by an individual known as "Ocho," a Hispanic male, approximately 25 to 30 years old, 5 feet 10 inches tall, with a medium build.  (*See* Ex. 1 at 1-2.)  The CI told Officer Werner that Ocho would be returning to Minnesota with the methamphetamine during the week of January 26.  (Ex. 1 at 1-2.)  The CI also provided cell-phone number used by Ocho.

Based on the information received, a GPS warrant was obtained to track the phone and tracking began on January 26.  Initially, the phone was located in San Jose, California.  On January 27, the phone began traveling east on Interstate Highway 80, out of California.  Officer Werner testified that Interstate Highway 80 is the most direct route

from California to Minnesota, and it is "[f]airly common" for narcotics to be trafficked from California to Minnesota. Officer Werner continued to monitor the phone's location as it traveled east.

Once the phone arrived in Nebraska, Officer Werner calculated the approximate time for arrival in Minnesota. At approximately 2:00 a.m. on January 28, a series of law-enforcement vehicles set up between Owatonna and Lakeville, Minnesota, on Interstate Highway 35 heading into Minneapolis to watch for the silver Audi and intercept it. Officer Werner relayed the information provided by the CI to the other law-enforcement officers involved.

Around 5:00 a.m., one of the officers involved in the surveillance pulled into a gas station in Owatonna and spotted a silver Audi matching the CI's description. The officer also observed that the driver, Defendant, was a Hispanic male matching the CI's description. Defendant was putting gas in the silver Audi. At the hearing, Officer Werner acknowledged that Defendant was three inches shorter than the description given by the CI and three years older than the approximate age given by the CI. Officer Werner also acknowledged that there were other silver Audis located in California and other vehicles with dark tinted windows.

Surveillance was maintained on the silver Audi as it got back onto Interstate Highway 35. Law enforcement followed the silver Audi to Burnsville, roughly 45 minutes. Officer Werner testified that law enforcement waited a period of time before stopping the silver Audi to determine whether there was a "trail car" associated with the Audi. Around 6:00 a.m., Minnesota state troopers involved in the surveillance were

directed to stop the silver Audi. It is undisputed that there was no traffic violation precipitating the stop. Defendant was the only occupant in the vehicle. Defendant came to a slow stop, traveling a few blocks before coming to a complete stop. Officer Werner testified that the delay in stopping was suspicious because the time can be used to hide things, such as guns, or let others know that the vehicle has been stopped by law enforcement.

Law enforcement secured the silver Audi so that it could be searched and placed Defendant under arrest. Law enforcement did not observe anything in "plain view" in the Audi that aroused suspicion of criminal activity. No additional facts were obtained before Defendant was placed under arrest. At no time did the CI or law enforcement verify that Defendant was Ocho. A search of Defendant incident to his arrest revealed two cell phones and $2400.

Officer Werner obtained a search warrant to search the silver Audi the same day. The search revealed, among other things, three bundles of suspected narcotics, a handgun, and several rounds of ammunition. (Ex. 1 at 5.) Later, Officer Werner dialed the cell-phone number provided by the CI and one of the phones recovered from Defendant rang.

## II. CONCLUSIONS OF LAW

Based upon the foregoing Findings, the undersigned makes the following conclusions of law. Defendant argues that (1) there was no reasonable articulable suspicion for the traffic stop; (2) his arrest and the impounding of the silver Audi impermissibly expanded the scope of the traffic stop; and (3) the warrant application to

4

search the silver Audi failed to establish probable cause.  (Def.'s Mem. in Supp. at 4, 6, 13, ECF No. 19.)

### A.  Stop of the Silver Audi

"The Fourth Amendment prohibits 'unreasonable searches and seizures.'"  *Heien v. North Carolina*, 135 S. Ct. 530, 534 (2014); *accord United States v. Hollins*, 685 F.3d 703, 705 (8th Cir. 2012).  "A traffic stop constitutes a seizure of a vehicle's occupants, including any passengers. . . . and must be supported by reasonable suspicion or probable cause."  *Hollins*, 685 F.3d at 705-06 (quotations and citation omitted); *see also Heien*, 135 S. Ct. at 536 ("A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment.").

"The Fourth Amendment is satisfied if the stop is supported by reasonable suspicion that criminal activity may be afoot."  *United States v. Corrales-Portillo*, 779 F.3d 823, 829 (8th Cir. 2015) (quotation omitted).  "A law enforcement officer has reasonable suspicion when the officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed."  *Hollins*, 685 F.3d at 706 (quotation omitted).  "Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause."  *United States v. Patrick*, 776 F.3d 951, 954 (8th Cir. 2015) (quotation omitted).

Probable cause is "a higher standard than reasonable articulable suspicion."  *United States v. Banks*, 553 F.3d 1101, 1104 (8th Cir. 2009); *see Patrick*, 776 F.3d at

954.  "A warrantless arrest by law enforcement is reasonable where there is probable cause to believe that someone has committed or is committing a crime." *United States v. Winarske*, 715 F.3d 1063, 1066 (8th Cir. 2013) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)); *accord United States v. Morales*, 923 F.2d 621, 623 (8th Cir. 1991) ("Police officers have probable cause to make an arrest if the facts and circumstances within the law enforcement officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." (quotation omitted)); *see also Draper v. United States*, 358 U.S. 307, 310 (1959) ("The crucial question for us then is whether knowledge of the related facts and circumstances gave Marsh probable cause within the meaning of the Fourth Amendment . . . to believe that petitioner had committed or was committing a violation of the narcotics laws." (quotation and footnote omitted)).

Reasonable suspicion "rise[s] to the level of probable cause when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Patrick*, 776 F.3d at 955 (quotation omitted).  "Arresting officers are not required to witness actual criminal activity or have collected enough evidence so as to justify a conviction for there to be a legitimate finding of probable cause to justify a warrantless arrest." *Winarske*, 715 F.3d at 1067. "'To determine whether an officer had probable cause to arrest an individual, [courts] examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer,

6

amount to probable cause.'"  *Id.* at 1066 (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).  "[T]he mere probability or substantial chance of criminal activity, rather than an actual showing of criminal activity, is all that is required."  *Id.* at 1067 (quotation omitted).

"The determination of whether probable cause, or reasonable suspicion, existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time."  *Hollins*, 685 F.3d at 706 (quotation omitted).  When evaluating whether reasonable suspicion or probable cause existed, courts consider the totality of the circumstances.  *Patrick*, 776 F.3d at 955 (probable cause); *Corrales-Portillo*, 779 F.3d at 829 (reasonable suspicion).

"'A confidential informant's tip may support a reasonable suspicion if it has sufficient indicia of reliability, such as the informant's track record as a reliable source or independent corroboration of the tip.'"  *Corrales-Portillo*, 779 F.3d at 830 (quoting *United States v. Manes*, 603 F.3d 451, 456 (8th Cir. 2010)).  Similarly, "[w]hen an informant has provided reliable information in the past or where his tip was independently corroborated, a court may deem the informant's tip sufficiently reliable to support a probable cause determination."  *Winarske*, 715 F.3d at 1067 (quotation omitted); *see Patrick*, 776 F.3d at 955-56.  "'An informant may also prove himself to be a reliable source for law enforcement by providing predictive information about a meeting time or place.'"  *Corrales-Portillo*, 779 F.3d at 830 (quoting *Winarske*, 715 F.3d at 1067); *see Patrick*, 776 F.3d at 955 ("The informant's willingness to arrange a meeting and his accurate prediction of events also provided strong support to the veracity of the

7

informant's information."). "As the Supreme Court has made clear, '[when] an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity.'" *Manes*, 603 F.3d at 456 (alteration in original) (quoting *Alabama v. White*, 496 U.S. 325, 331 (1990)); *see also Illinois v. Gates*, 462 U.S. 213, 244 (1983) ("Because an informant is right about some things, he is more probably right about other facts." (quotation omitted)). "The reliability of an informant's information 'is bolstered if the tip is corroborated not only by matching an identity or description, but also by accurately describing a suspect's future behavior.'" *Corrales-Portillo*, 779 F.3d at 830 (quoting *Manes*, 603 F.3d at 456).

There is nothing in the record concerning the CI's track record for reliability. But "if an informant is otherwise unknown to police and has no proven track record of reliability, police may deem an informant credible and make a finding of probable cause when an informant's information is at least partly corroborated." *Winarske*, 715 F.3d at 1067; *accord Corrales-Portillo*, 779 F.3d at 830. In this case, the CI gave Officer Werner detailed information about Ocho's narcotics trafficking, including Ocho's travel route (California to Minnesota), time of travel (week of January 26), and mode of travel (a silver Audi with California license plates and very dark tinted windows). The CI also gave Officer Werner a physical description of Ocho, including Ocho's approximate age and height, and a cell-phone number used by Ocho. Having obtained a GPS warrant, Officer Werner began tracking the location of the cell phone the same week that the CI informed him that Ocho would be travelling to Minnesota. On January 26, the phone was

8

in California and then, over the course of the next two days, began moving eastward on Interstate Highway 80—the most direct route between California and Minnesota. Based on the movement of the phone, Officer Werner calculated an approximate arrival time in Minnesota and had law enforcement officers stationed on Interstate Highway 35 going into Minneapolis, watching for a silver Audi with California license plates and very dark tinted windows. Law enforcement then observed a silver Audi with California license plates and very dark tinted windows (a vehicle matching the CI's description) at a gas station in the vicinity. Law enforcement then observed that the driver of the silver Audi, who was putting gas into the vehicle, generally matched the physical description provided by the CI. After leaving the gas station, the silver Audi traveled on Interstate Highway 35 towards Minneapolis. Not only were the physical descriptions of the vehicle and driver consistent with the CI's descriptions, but the CI accurately predicted the time and route of travel, which Officer Werner was able to corroborate by tracking the cell-phone number provided by the CI. The CI's "accurate prediction of events . . . provided strong support to the veracity of the . . . information." *Patrick*, 776 F.3d at 955; *see Gates*, 462 U.S. at 244 ("The corroboration of the letter's predictions that the Gates' car would be in Florida, that Lance Gates would fly to Florida in the next day or so, and that he would drive the car north toward Bloomingdale all indicated, albeit not with certainty, that the informant's other assertions also were true.").

The present case is similar to *Draper*, "the classic case on the value of corroborative efforts of police officials." *Gates*, 462 U.S. at 242 (citing 358 U.S. 307). As summarized by the Eighth Circuit,

9

> In *Draper*, an informant reported that a man named Draper would arrive in Denver on one of two dates on a train from Chicago and that he would be bringing heroin. The informant also supplied a detailed physical description of Draper and stated that he would be carrying a "tan zipper bag" and would be walking "real fast" as was his habit. The *Draper* informant had always given accurate information in the past, and on this occasion, the narcotics agent was able to "personally verif[y] every facet of the information" except whether Draper "had accomplished his mission." With such corroboration, the agent "had 'reasonable grounds' to believe that the remaining unverified bit of [the informant's] information—that Draper would have the heroin with him—was likewise true."

*Morales*, 923 F.2d at 624 (citations omitted).

In this case, "[t]he officers had more than enough reliable information to establish a 'particularized and objective basis for suspecting legal wrong doing.'" *Corrales-Portillo*, 779 F.3d at 830 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)) (internal quotation marks omitted); *see Patrick*, 776 F.3d at 955 ("In this case, the time and location of the meeting place, the color of the car, the dent in its passenger-side door, and even the car's make all point to the informant's accuracy and truthfulness with regard to the driver's identity." (footnote omitted)). At the time law enforcement stopped the silver Audi, there was probable cause to believe the driver was committing a crime, i.e., narcotics trafficking. *Patrick*, 776 F.3d at 956. As in *Draper*, the only thing left to verify was whether the driver of the silver Audi had "accomplished his mission" and brought the narcotics to Minnesota. 358 U.S. at 313.

Defendant argues that, while law enforcement was able to corroborate "some aspects" of the CI's tip, the corroborated information did not "implicate criminal

behavior." (Def.'s Mem. in Supp. at 5.) The Eighth Circuit "has repeatedly stated that the presence of probable cause does not depend on verification of illicit or even furtive activity; the corroboration of minor, innocent details can suffice to establish probable cause." *Morales*, 923 F.2d at 625 (quotation omitted) (citing cases). "[T]he corroboration of the [CI's] tip's 'innocent' details made it reasonable to believe that descriptions of [the silver Audi driver's] illegal activities were accurate." *Id.* (citing *Gates*, 462 U.S. at 244-45).

Defendant also argues that it was never confirmed that Defendant, the driver of the silver Audi, was in fact Ocho.[1] (Def.'s Mem. in Supp. at 5.) Whether Defendant was in fact Ocho, however, does not alter the fact that law enforcement had probable cause to believe the driver of the silver Audi was committing a crime. "Probable cause does not require certainty regarding . . . identity." *United States v. Williams*, 616 F.3d 760, 765 (8th Cir. 2010). *Patrick* is instructive. In *Patrick*, law enforcement was attempting to locate a "Broderick Barefield" with an outstanding arrest warrant. 776 F.3d at 953. A known confidential informant, "purport[ing] to know Barefield's whereabouts[,] . . . arranged a meeting . . . in a McDonald's parking lot with the person [the informant] *claimed* was Barefield." *Id.* (emphasis added). "The informant reported Barefield would arrive in a gold Oldsmobile with a dented passenger-side door and would have a plastic water bottle containing drugs." *Id.*

---

[1] Citing the "Squad Car Video," Defendant asserts that "[w]hen [he] was stopped and detained for more than [20] minutes before being arrested, officers did not confirm if [he] was 'Ocho.'" (Def.'s Mem. in Supp. at 5.) No squad-car video was introduced at the hearing. (*See* Minutes, ECF No. 18.) In any event, on cross-examination, Officer Werner testified that no attempts were made to verify that Defendant was Ocho.

> At the appointed time, a gold-brown Buick arrived and parked near the informant.  The car's driver exited the car and conversed with the informant for serval minutes, then got back into his car and left.  As the car turned onto the street, its passenger side was exposed revealing a dented door.  [None of the law enforcement agents at the scene] w[ere] able to positively identify the driver as Barefield.

*Id.*

Nevertheless, "[t]asked with apprehending the driver, [two other officers] conducted a traffic stop."  *Id.*  Although he "had not seen a photo of Barefield, . . . [one of the officers] was told the driver would be an African-American male with a warrant out for his arrest, would be driving a gold-brown Oldsmobile with a damaged passenger-side door, and was likely armed."  *Id.*  The officer "removed the driver (an African-American male), placed him in handcuffs, patted him down, and placed him in [the officer's] vehicle.  As he removed the driver, [the officer] noticed a clear Aquafina water bottle in the car's center console which appeared to have a 'leafy substance floating in it.'"  *Id.*  "Upon further inspection, [another law enforcement officer] found the top of the bottle could be removed to access packages of marijuana and fake cocaine inside."  *Id.* at 954.  Ultimately, the driver was identified at the police station as Broderick Patrick (who also had an outstanding warrant for his arrest), *not* Barefield.  *Id.*

The Eighth Circuit affirmed the district court's denial of Patrick's motion to suppress evidence from the stop.  *Id.* at 956.  The Eighth Circuit concluded that "the time and location of the meeting place, the color of the car, the dent in its passenger-side door, and even the car's make all point to the informant's accuracy and truthfulness with regard to the driver's identity."  *Id.* at 955.  The Eighth Circuit went on to state that, "*[e]ven*

*disregarding the mistaken identity*, the informant told the officers that whoever the driver was, he would have drugs on him.  This information, combined with the informant's corroborated credibility, also justified a reasonable belief that the driver had committed a crime."  *Id.* at 956 (emphasis added).  The Eighth Circuit held that, "[a]t the time [the officer] made the stop, reasonable suspicion and even probable cause existed to believe the driver had committed a crime.  This is more than enough to justify a stop."  *Id.* (citing *White*, 496 U.S. at 330).  The same is true here.  Even if Defendant was not Ocho, at the time he was stopped, the officers were more than justified in believing that he, as the driver of the silver Audi, was committing a crime.

Moreover, even if the CI's physical description of Ocho could be considered vague, "where a person meets the description of a suspect, and other information links that suspect to a crime, there may be sufficient facts to support probable cause."  *United States v. Van*, No. 07-cr-102 (MJD/JJG), 2007 WL 2159497, at *8 (D. Minn. July 25, 2007) (citing *United States v. Martin*, 28 F.3d 742, 745 (8th Cir. 1994)); *accord United States v. Washington*, No. 10-cr-162 (ADM/SRN), 2010 WL 4884501, at *7 (D. Minn. Aug. 24, 2010), *adopting report and recommendation*, 2010 WL 4884458 (D. Minn. Nov. 24, 2010).  Here, while Defendant's height was three inches shorter and his age three years older than that provided by the CI, such variances do not detract materially from the CI's estimations and, in fact, reinforce the general accuracy of the information law enforcement had received.

### B.  Arrest of Defendant

Defendant next argues that even if the stop of the silver Audi was valid, the stop was impermissibly expanded when he was placed under arrest and the silver Audi was impounded.  (Def.'s Mem. in Supp. at 6-13.)  As stated above, law enforcement had probable cause to believe that a crime was being committed, namely, narcotics trafficking, before they stopped the silver Audi based on their corroboration of the CI's tip, including both physical descriptions and predictive information.  Whether Defendant was in fact Ocho, the officers had probable cause to arrest Defendant believing that Defendant—who substantially matched the physical description given by the CI, was driving a vehicle matching the CI's description, and was traveling the route predicted by the CI at the time predicted by the CI—was transporting narcotics in his vehicle from California to Minnesota.  *See Patrick*, 776 F.3d at 956 ("When arrested, [Defendant's] identity was irrelevant—the officers reasonably suspected this man had contraband regardless whether he was the man they had thought he was.").  Law enforcement had sufficient grounds to arrest Defendant before the stop and did so shortly thereafter. Defendant's arrest and the subsequent impoundment of the silver Audi were not the result of an expanded traffic stop.

### C.  Search of the Audi

"Under the 'automobile exception' to the Fourth Amendment, police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband or other evidence of a crime."  *Winarske*, 715 F.3d at 1068; *accord United States v. Vore*, 743 F.3d 1175, 1179 (8th Cir. 2014) ("Of relevance here, the

'automobile exception' permits the warrantless search of a vehicle if the police had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search began." (quotation omitted)).  For the reasons stated above, the officers had probable cause to believe the silver Audi contained contraband.  *See Winarske*, 715 F.3d at 1068.  Accordingly, having lawfully stopped the silver Audi based on probable cause, no warrant was required to search the vehicle.  Although the officers obtained a warrant, it was not needed.  Given that the warrant was unnecessary under the circumstances, the Court declines to address Defendant's arguments concerning the sufficiency of the warrant application and supporting affidavit.[2]

[Continued on next page.]

---

[2] The Court notes that Defendant's arguments with respect to the search warrant largely mirror his arguments concerning the stop of the silver Audi, which have been considered and rejected by the Court.  (*Compare* Def.'s Mem. in Supp. at 5-6 *with* 13-15.)

## III. RECOMMENDATION

Based upon the foregoing, **IT IS HEREBY RECOMMENDED** that Defendant's

Pretrial Motion for Suppression of Evidence (ECF No. 11) be **DENIED**.


Date: November____9____, 2015                    _____*s/ Tony N. Leung*_____
                                                 Tony N. Leung
                                                 United States Magistrate Judge
                                                 for the District of Minnesota

                                                 *United States v. Cardenas*
                                                 File No. 15-cr-198(1) (JRT/TNL)


## <u>NOTICE</u>

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.