# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA

Plaintiff,

v.

EDDY ANTONIO CARDENAS,

Defendant.

Crim. No.  15-198(1) (JRT/TNL)

**MEMORANDUM OPINION
AND ORDER ADOPTING REPORT
AND RECOMMENDATION OF
MAGISTRATE JUDGE**

---

David P. Steinkamp, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for plaintiff.

John C. Lillie III, **DUDLEY & SMITH PA**, 101 East 5th Street, Suite 2602, St. Paul, MN 55101, for defendant.

On January 26, 2015, law enforcement received an anonymous tip from a confidential informant ("CI") that an individual would be transporting methamphetamine from California to Minnesota.  Based on this tip, officers pulled over a vehicle driven by Defendant Eddy Antonio Cardenas.  Cardenas was then arrested and a search of the vehicle revealed methamphetamine and a gun.  On July 7, 2015, Cardenas was indicted on charges of possession with intent to distribute methamphetamine and possession of a firearm in furtherance of a drug trafficking crime.  Cardenas moved to suppress the evidence recovered during the vehicle search.  On November 9, 2015, United States Magistrate Judge Tony N. Leung issued a Report and Recommendation ("R&R"),

recommending that the Court deny Cardenas' motion to suppress.  Cardenas now objects to the R&R.

After reviewing *de novo* Cardenas' objections, the Court concludes that law enforcement had probable cause to initiate the traffic stop and to arrest Cardenas. Furthermore, the Court concludes that law enforcement had justification to search the vehicle under the automobile exception.  Thus, the Court will overrule Cardenas' objections, adopt the Magistrate Judge's R&R, and deny Cardenas' motion to suppress.

## BACKGROUND

Jeffrey Werner is a police officer with the Minneapolis Police Department. Werner has been in law enforcement for over 20 years, and has spent the last three years conducting narcotics investigations.  On or around January 26, 2015, Werner received a tip from an anonymous CI that an individual known as "Ocho" would be transporting methamphetamine by car from California to Minneapolis, Minnesota, during the week of January 26, 2015.  The CI told Werner that Ocho would be driving a silver Audi, model A8, with a California license plate and dark, tinted windows.  The CI described Ocho as a Hispanic male, approximately 25 to 30 years old, 5 feet 10 inches tall, with a medium build.  The CI also disclosed a cell phone number used by Ocho.

Based on this tip, Werner obtained a GPS warrant to track the phone.  On January 26, 2015, officers determined that the phone was located in San Jose, California. One day later, the phone began moving eastward along Interstate Highway 80.  Werner noted that Interstate Highway 80 is the most direct route linking California to Minnesota

and that it is fairly common for methamphetamines and other drugs to be trafficked between the two states.  Werner also observed that the phone would "be turned off for hours at a time and then would be turned back on for a brief moment, like the person working the phone didn't want their location revealed."  (Gov't Ex. 1.)

When the phone entered Nebraska, Werner estimated how long it would take for the phone to reach Minnesota and then set up corresponding surveillance along Interstate Highway 35 between Owatonna and Lakeville, Minnesota.  At approximately 5:00 a.m. on January 28, 2015, an officer involved in the surveillance spotted a silver Audi with California license plates matching the CI's description at a gas station in Owatonna.  The officer observed that the driver, who was filling the car with gas, was Hispanic and otherwise appeared to resemble the CI's description.

Officers followed the vehicle as it drove northbound on Interstate Highway 35 towards Minneapolis.  At approximately 6:00 a.m., officers initiated a traffic stop.  The stop was not prompted by a traffic violation, nor did officers observe any traffic violations.  The driver did not immediately stop and instead continued for several blocks.  When the car eventually stopped, officers identified Cardenas as the driver and sole occupant of the vehicle.  Officers did not see anything in plain view within the vehicle suggesting criminal activity.  Cardenas was then arrested and searched incident to arrest – officers found two cell phones and $2400 on his person.  The silver Audi was also secured and impounded.  Werner obtained a search warrant and a search of the vehicle later that day revealed narcotics, a handgun, and ammunition.

Prior to initiating the traffic stop, officers did not verify that Cardenas was Ocho or that Cardenas was in possession of the cell phone being tracked. Cardenas also did not completely match the physical description given by the CI. Whereas the CI stated that Ocho was 25-30 years old and 5 foot 10 inches tall, Cardenas was 33 years old and 5 foot 7 inches tall.

On July 7, 2015, Cardenas was indicted on charges of possession with intent to distribute methamphetamine and possession of a firearm in furtherance of a drug trafficking crime. (Indictment, July 7, 2015, Docket No. 1.) Cardenas moved to suppress all evidence seized by police, arguing that officers lacked a reasonable articulable suspicion to justify the traffic stop; that officers lacked probable cause to expand the stop, arrest him, and impound the vehicle; and that the search warrant application and supporting affidavit for the vehicle lacked probable cause. On September 23, 2015, the Magistrate Judge held a hearing on the motion. Werner testified, and the prosecution submitted several exhibits, including the search warrant application and supporting affidavit; the search warrant; and the Audi's receipt, inventory, and return form.

In his R&R, the Magistrate Judge recommends that the Court deny Cardenas' motion to suppress. (R&R, Nov. 9, 2015, Docket No. 21.) The Magistrate Judge found that the traffic stop and arrest were constitutionally proper because the officers had probable cause to believe that a crime – narcotics trafficking – was being committed. (*Id.* at 8-14.) The Magistrate Judge concluded that the CI's tip provided the basis for probable cause because officers were able to corroborate various aspects of the tip. (*Id.*) The Magistrate Judge also found that the search of the silver Audi was constitutionally

proper under the automobile exception because, irrespective of the validity of the search warrant application, officers had probable cause to believe that the vehicle contained evidence of a crime.   (*Id.* at 14-15.)   Cardenas now objects to the R&R.   (Def.'s Objs. to R&R, Nov. 23, 2015, Docket No. 22.)

## ANALYSIS

### I.   STANDARD OF REVIEW

For a dispositive matter such as a motion to suppress evidence, "[t]he district judge must consider de novo any objection to the magistrate judge's recommendation. The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."   Fed. R. Crim. P. 59(b)(1), (3); *see also* 28 U.S.C. § 636(b)(1).

### II.   CARDENAS' OBJECTIONS

Cardenas objects to the R&R on the following grounds.   First, Cardenas argues that the CI's tip was insufficient to support a finding of probable cause necessary to justify the traffic stop, warrantless arrest, and vehicle search.   Cardenas specifically challenges the Magistrate Judge's reliance on two Eighth Circuit decisions, *United States v. Patrick*, 776 F.3d 951 (8th Cir. 2015) and *United States v. Williams*, 616 F.3d 760 (8th Cir. 2010).   Cardenas also suggests that the Magistrate Judge's recommendation improperly dilutes the probable cause standard.   Second, Cardenas re-asserts the arguments that he presented in his initial brief and at the September 23, 2015, suppression hearing.

### A.    Traffic Stop and Arrest

Police officers may initiate a traffic stop and arrest a suspect without a warrant if they have "probable cause to believe that [the suspect] has committed or is committing a crime." *United States v. Winarske*, 715 F.3d 1063, 1066 (8th Cir. 2013) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)); *see United States v. Hollins*, 685 F.3d 703, 705 (8th Cir. 2012) ("A traffic stop 'must be supported by reasonable suspicion or probable cause.'" (quoting *United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir. 2008)). "To determine whether an officer had probable cause to arrest an individual, [the Court] examine[s] the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Winarske*, 715 F.3d at 1066 (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)); *see Patrick*, 776 F.3d at 955 (noting that probable cause is evaluated based on the "totality of the circumstances at the time of the arrest"). The officer need not have "witness[ed] actual criminal activity or . . . collected enough evidence so as to justify a conviction for there to be a legitimate finding of probable cause to justify a warrantless arrest. Instead, the mere 'probability or substantial chance of criminal activity . . .' is all that is required." *Winarske*, 715 F.3d at 1067 (citation omitted) (quoting *United States v. Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005)).

A tip from a CI can support a finding of probable cause if the "tip [is] sufficiently reliable." *Id*. A tip may be deemed reliable if the "informant has provided reliable information in the past." *Id.* However, even if the CI is "unknown to police and has no

proven track record of reliability," the tip can still support a finding of probable cause if the "informant's information is at least partly corroborated." *Id.* "As the Supreme Court has made clear, '[when] an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity.'" *United States v. Manes*, 603 F.3d 451, 456 (8th Cir. 2010) (quoting *Alabama v. White*, 496 U.S. 325, 331 (1990)). Thus, the "reliability of an [unknown] informant's information is 'bolstered if the tip is corroborated not only by matching an identity or description, but also by accurately describing a suspect's future behavior.'" *Patrick*, 776 F.3d at 955 (quoting *Manes*, 603 F.3d at 456). Reliability is further bolstered when an unknown CI "provid[es] predictive information about a meeting time or place." *Id.* (quoting *Winarske*, 715 F.3d at 1067).

Here, although the CI was unknown to police and had no track record of reliability, officers were able to partly corroborate his tip. Officers corroborated the CI's description of the vehicle – a silver Audi, model A8, with tinted windows and a California license plate. Officers substantially corroborated the CI's description of the driver – Hispanic with a medium build, between the ages of 25-30 and approximately 5 feet 10 inches tall. Although Cardenas is three inches shorter and three years older than the individual described by the CI, these inaccuracies are not so great as to undermine the overall accuracy and corroboration of the description. Officers also corroborated the CI's description of driver's future behavior: driving from California to Minnesota at a particular time with a particular cell phone. Using cell phone GPS tracking, Werner initially determined that the phone was located in San Jose, California; he then observed

the phone traveling east along Interstate Highway 80, the most direct route linking California to Minnesota. Werner then used the phone's location and rate of travel to predict when the driver would arrive in Minnesota. Based on this prediction, Werner set up surveillance along a stretch of Interstate Highway 35, the main corridor into Minneapolis. Shortly thereafter, an officer observed the silver Audi within the surveillance area. And, the vehicle's arrival in Minnesota on January 28, 2015, corresponded with the CI's tip that the drugs would be transported during the week of January 26, 2015.

Other factors also support the reliability of the CI's tip, including Officer Werner's knowledge based on experience that California-to-Minnesota is a fairly common drug route and his observation that the phone would be turned off for long periods of time followed by brief moments of activity, consistent with someone who wanted to conceal his or her location. *See Illinois v. Gates*, 462 U.S. 213, 243 (1983) (holding that law enforcement's knowledge that "Florida is well-known as a source of narcotics" and the suspect's irregular travel schedule were "suggestive of a pre-arranged drug run" and could support a finding of probable cause in concert with an anonymous letter partially corroborated by police).

Cardenas argues that the Magistrate Judge improperly relied on the Eighth Circuit's decision in *United States v. Patrick*. But, contrary to Cardenas' argument, *Patrick* strongly supports a finding of probable cause in this case. In *Patrick*, an unknown CI informed police that he knew the whereabouts of an individual wanted on an arrest warrant, Broderick Barefield. 776 F.3d at 953. Officers directed the CI to set up a

meeting with Barefield in a McDonald's parking lot at a particular time.  *Id.*  The CI arranged the meeting and told police that Barefield would be driving a gold-brown Oldsmobile with a dented door.  *Id.*  The CI also told officers that Barefield would have drugs in his car.  *Id.*  Officers surveilled the McDonald's and observed a gold-brown vehicle of a similar make with a dented door.  *Id.*  Officers were not, however, able to confirm that the driver was Barefield.  *Id.*  Officers then initiated a traffic stop, searched the car, and found drugs.  *Id.* at 953-54.  Officers later learned that the driver was not Broderick Barefield, but rather, Broderick Patrick.  *Id.* at 954.

Patrick moved to suppress the drugs, but the Eighth Circuit affirmed the district court's denial of his suppression motion.  *Id.* at 957.  The court found that the officers had probable cause to suspect criminal activity **before** they initiated the stop, writing: "Even disregarding the mistaken identity, the informant told the officers that whoever the driver was, he would have drugs on him.  This information, combined with the informant's corroborated credibility, . . . justified a reasonable belief the driver had committed a crime."  *Id.* at 955-56.  The Eighth Circuit found that the CI had "corroborated credibility," despite the misidentification, because (1) police confirmed "the time and location of the meeting place, the color of the car, the dent in its passenger-side door, and even the car's make," (2) the CI could be held accountable for false information because officers knew his identity, and (3) the CI consented to arranging the meeting.  *Id.*

Here, the facts are largely analogous.  As in *Patrick*, the CI informed officers that the silver Audi contained drugs.  And, the CI's information was corroborated to an equal, if not greater, extent.  Officers corroborated not only specific information about the silver

Audi, but also information about the driver's physical appearance, his departure time, the location of a cell phone matching the most direct travel route from California to Minnesota, and his arrival time. This information also comported with Werner's knowledge that drugs are commonly trafficked between California and Minnesota, and his observation that the phone was turned off for hours at a time in between brief moments of activity.

Cardenas further argues that the Magistrate Judge improperly relied on *United States v. Williams* for the proposition that "[p]robable cause does not require certainty regarding . . . identity." 616 F.3d 760, 765 (8th Cir. 2010). Cardenas contends that *Williams* is distinguishable because although officers in that case did not know the suspect's identity prior to making the arrest, they had substantial information linking the suspect to drug trafficking. Yet without even analyzing whether *Williams* is distinguishable, the Court rejects this argument because the *Patrick* court expressly recognized that there can be probable cause for a traffic stop and arrest even if an unknown CI **misidentifies** the suspect, so long as the CI's credibility it sufficiently corroborated. *Patrick*, 776 F.3d at 955-56. Here, for the reasons outlined in the preceding paragraphs, officers sufficiently corroborated both the CI's tip and credibility. This is enough to support a finding of probable cause even though officers did not also confirm that Cardenas was Ocho prior to initiating the traffic stop.

Finally, Cardenas argues that the Magistrate Judge's recommendation improperly dilutes the probable cause standard because it would allow police to stop and arrest any individual upon the receipt of "vague" information from an anonymous CI regarding

transportation of drugs from one state to another, without confirmation of criminal activity. The Court, however, is not persuaded. As the Magistrate Judge noted, and this Court agrees, the CI gave particularized information regarding a crime and a suspect's future behavior, which law enforcement substantially corroborated. Moreover, as the Eighth Circuit has consistently held, "the presence of probable cause does not depend on the verification of illicit or even furtive activity; the 'corroboration of minor, innocent details can suffice to establish probable cause.'" *United States v. Morales*, 923 F.2d 621, 625 (8th Cir. 1991) (quoting *United States v. Ramos*, 818 F.2d 1392, 1397 n.7 (8th Cir. 1987)). Finally, officers had other indicators of criminal activity to bolster the reliability of the tip, including the commonality of the drug route and the intermittent cell phone activity.

Overall, the Court finds that law enforcement, prior to initiating the traffic stop, had probable cause to believe that the driver of the silver Audi was transporting methamphetamine. The CI's tip that drugs would be in the car, combined with the CI's corroborated credibility, Werner's knowledge that methamphetamine is commonly trafficked between California and Minnesota, and Werner's observation that the cell phone was turned on for only short periods of time, justified a reasonable belief the driver committed a crime. Because of this probable cause, law enforcement had sufficient

grounds both to initiate the traffic stop and to arrest Cardenas without first obtaining an arrest warrant.[1]

## B.     Vehicle Search

"[T]he 'automobile exception' permits the warrantless search of a vehicle if the police 'had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search began.'" *United States v. Vore*, 743 F.3d 1175, 1179 (8th Cir. 2014) (quoting *United States v. Wells,* 347 F.3d 280, 287 (8th Cir. 2003)). "[W]hen the automobile exception applies, the vehicle need not be immediately searched." *United States v. Castaneda*, 438 F.3d 891, 894 (8th Cir. 2006). "[T]he officers may conduct a warrantless search of the vehicle [pursuant to the automobile exception], even after it has been impounded and is in police custody." *Wells*, 347 F.3d at 288 (quoting *Michigan v. Thomas*, 458 U.S. 259, 261 (1982)).

Cardenas argues that the search of the silver Audi was constitutionally improper because the search warrant application and supporting affidavit did not support a finding of probable cause. The Court does not have to address this argument, however, because a warrant to search the vehicle was unnecessary. For the reasons outlined above, police had probable cause, before initiating the traffic stop, to believe that the silver Audi contained methamphetamine. Because of this probable cause, officers were justified under the automobile exception in conducting a warrantless search of the vehicle. That

---

[1] Because the Court finds that officers had probable cause to make a warrantless arrest **before** initiating the traffic stop, the Court need not address Cardenas' argument that officers improperly expanded the scope of the stop by arresting Cardenas.

the search took place after the vehicle had been impounded is immaterial.   Therefore,

evidence obtained from the search need not be excluded.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the

Court **OVERRULES** Defendant's objection [Docket Nos. 22] and **ADOPTS** the Report

and Recommendation of the Magistrate Judge dated November 9, 2015 [Docket No. 21]

to the extent that it is consistent with this Opinion.   **IT IS HEREBY ORDERED** that

Defendant's Motion for Suppression of All Evidence [Docket No. 11] is **DENIED**.


DATED: January 15, 2016
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court